WILLIAM W. WHITE, APPELLEE, v. ANNA S. McCULLOUGH ET AL., APPELLANTS.

FILED DECEMBER 14, 1909.    No. 16,299.

Intoxicating Liquors: LICENSE: PETITION. Upon a hearing of an application for a license to sell malt, spirituous and vinous liquors in the village of B., it was stipulated that said village contained 43 resident freeholders and no more. The petition of the applicant contained 23 names. Two of the signers were members of the village board, but did not vote on the question of the issuance of the license, although both were present and testified as witnesses for the applicant upon the hearing. The evidence failed to show that one of the signers was a resident of the village of B., and no proof was offered that the name of another person appended to the petition was signed by her or with her knowledge or consent. Held, That under a general denial, and specific denials that the petition was signed by a majority of the resident freeholders of the village, the license should be refused.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. Reversed.

William E. Shuman, for appellants.

H. D. Rhea and W. A. Stewart, contra.

REESE, C. J.

Appellee, White, filed a petition before the board of trustees of the village of Brady for a license to sell malt,

spirituous and vinous liquors within that village. A remonstrance was filed, and a hearing was had before three members of the board, and the license was granted. The remonstrants appealed to the district court, where the action of the board in granting the license was affirmed. They appeal to this court.

The first contention made by appellants is upon the question of the board to act under the notice of his application as published by the appellee. The notice was, substantially, in the usual form, except that it closed with the following language: "If there be no objection, remonstrance or proest filed within two weeks from May 15, A. D. 1909, said license will be granted." The notice was published May 21, 28, and June 4. The "two weeks from May 15" would end May 29, which would be prior to the last publication and one day after the second publication. It is contended that this publication, being jurisdictional, did not give authority to the board to act at any time. Without deciding whether the two weeks' notice required by the statute should date from the first or second publication, that question not having been presented, we must hold that, since no objection is made to the notice except as to the clause above quoted, the remonstrants not having been misled or deprived of any right to object to the issuance of the license, the clause will be treated as surplusage and the notice not vitiated thereby.

So far as is shown by the record before us, the first meeting of the board at which any action was taken upon the application for the license was held June 5, which was one day after the last, and eight days after the second, publication. It is recited in the record of that meeting that the chairman stated that the purpose of the meeting was to set a time for the hearing of the remonstrance against the issuance of the license to W. W. White. The record then recites that "the board, having previously ascertained that Thursday, June 10th, '09, would be agreeable to the contending parties, hereby set

the time for the hearing of said remonstrance at 9 o'clock A. M., Thursday, June 10th, '09," when the board adjourned. The next meeting of the board was held June 9, at which Mr. Ritenour, a member and the chairman, was present. After disposing of some routine business the board adjourned until the 10th at 9 o'clock, A. M. On that day the roll call shows that Rasmusson, chairman *pro tempore*, Marcott and Burke alone were present, but the record of the meeting shows that Ritenour, the chairman, was also present. The attorney representing the applicant asked leave to have his (Ritenour's) name added to the petition. This was objected to by remonstrants for the reasons that the petition then on file was insufficient, and that no proper notice had been published, and, further, that Ritenour was a member of the board. It was "then moved by T. T. Marcott and seconded by R. C. Burke that V. V. Ritenour be allowed to sign the petition." A vote was then taken, when Rasmusson, Marcott and Burke voted Aye. The record continues: "Chairman declares the motion duly carried, and Mr. Ritenour then signs the petition." Soderman, the other member, had previously signed the petition. Both were upon the witness stand and testified on behalf of appellee. While it is true that neither Ritenour nor Soderman are recorded as voting upon the question of the granting of the license, none but the three above named answering the roll call on the final vote, yet the whole proceeding shows upon its face a want of appreciation of the duties and obligations of members of the municipal board which merits the condemnation of all lovers of official rectitude and fair play. The board consisted of five members, Mr. Ritenour being the chairman. It is evident that the petition was understood to be lacking in names. Two of the members disqualify themselves in order to insure the requisite number, leaving the other three to grant the license. The object and purpose is patent.

The next contention is that the petition is not signed by a sufficient number of resident freeholders of the vil-

lage of Brady.   It was stipulated on the hearing that "there are forty-three and no more resident freeholders in the corporate limits of the village of Brady." This being true, it is apparent that, in order to confer jurisdiction, the petition would have to be signed by at least 22 persons having the necessary qualifications.   If the names of Ritenour and Soderman are counted there were 23.

Johnson Ditto, one of the signers of the petition, was called as a witness on the part of the applicant. His testimony showed that he was the owner of real estate in the village of Brady, but we find no proof anywhere in the record that he was a resident thereof.

The name "Ellen St. Marie" appears on the petition as one of the signers.   She was not called as a witness. A deed was introduced showing a conveyance of property to her.   An effort was made to prove the genuineness of the signature to the petition as hers, but the witness interrogated testified that he did not know her writing and did not know if she signed the petition.   It appears by reasonable inference, at least, that she is the wife of Fred St. Marie, one of the signers, but he was not called as a witness, and we are unable to find any proof that Mrs. St. Marie signed or authorized the signing of her name as one of the petitioners.   The matter of the residence of the petitioners, as well as their signatures to the petition, were put in issue by the general denial as well as specific denials, and by a well-settled rule this placed the burden upon the applicant to prove the facts.

It is not deemed necessary to pursue the inquiry further, as the failure to qualify as to the two signers reduces the number remaining to 21, which is less than the number required by section 25, ch. 50, Comp. St. 1909, and it follows that the judgment of the district court must be reversed and the license canceled, which is done.

REVERSED.